No. 5597.

FLASH, LEWIS & CO. vs. ADLER & GOLDMAN.

An agreement to insure a lot of goods, made by the seller with the buyer, means that they shall be insured from the point of shipment to the point of destination, and the

Flash, Lewis & Co. *vs.* Adler & Goldman.

seller's habit or custom, not shewn to be known to the buyer, to insure only a part of the route, leaving uninsured another part equally dangerous, cannot control the agreement.

Where a seller agrees to ship goods under insurance, and fails to do it, he cannot recover the price of the goods of the buyer, if lost. The contract is commutative, what is promised by one party being the equivalent consideration of what is promised by the other.

APPEAL from the Sixth District Court of New Orleans.    SAUCIER, J.

*Tucker* and *Singleton & Browne* for Plaintiff.    *Jonas* for Defendants and Appellants.

SPENCER, J.    Plaintiffs are merchants of New Orleans.    Defendants merchants of Jacksonport, Ark.    Goldman, one of the defendants, being in St. Louis in September, 1873, met plaintiffs' agent or drummer, who solicited an order for plaintiffs at New Orleans.

Goldman gave an order for a lot of groceries amounting to $1,439.64 to be shipped by plaintiffs at New Orleans to defendants at Jacksonport.    It was expressly stipulated that plaintiffs were, on shipping the goods, to insure them.    There is conflicting testimony as to the route by which they were to be shipped.

We incline to think that no particular route was designated.    The plaintiffs shipped the goods on October 3rd, 1873, by steamer "Glencoe" via the Mississippi River, to Hopefield, Ark., thence by rail to Duvall's Bluff, on White River, whence they were reshipped by steamer "City of Augusta" for Jacksonport.    Plaintiffs insured the goods only to Hopefield.    They were lost on October 10th, by the sinking of the "City of Augusta" in White River.

Defendants never received any part of the goods and they were non-insured.    Defendants refusing to pay, plaintiffs brought this suit by attachment and garnishment.

There was judgment for plaintiff and defendants appeal.

The sole question is, who must bear the loss of these goods?

Plaintiffs contend that they were not in the habit or custom of insuring beyond "Hopefield."

Their reason for this, as stated by one of the firm, was that they did not know, that beyond that point there was any river transportation to reach Jacksonport.

That had they known it they would, under defendants' instructions and the agreement, have certainly insured against the loss.

Plaintiffs further contend that whilst it is true there was an agreement that they were to insure the goods, yet that agreement did not specify from what point and to what point the insurance was to be effected. This is an evasion of a fair interpretation of the agreement, which of course meant from the point of shipment to that of destination. An agreement to insure goods shipped, when not qualified or limited, cannot fairly receive any other interpretation; and the plaintiffs' habit or custom, not shewn to be known to defendants, of only insuring part of the way and leaving uninsured another part, equally or more dangerous, cannot control such agreement.

Plaintiffs were by the agreement and instruction bound to insure from New Orleans to Jacksonport.

They had no right to ship them in any other way than covered by insurance, which defendants ordered to be effected and which was to be at defendants' expense.

Plaintiffs admit that if they had known the goods were to be reshipped by river at Duvall's Bluff, that they would have felt bound to insure them.

They chose the route themselves, and if they did not ascertain this fact it was their own negligence.

We are bound to say that the plaintiffs did not carry out their part of the agreement. They agreed to ship the goods under insurance. They failed to do so. Not having complied with their own obligations, they cannot enforce the correlative obligations to the defendants. The contract was that plaintiffs should ship under insurance to defendants a bill of goods, and that in sixty days defendants would pay for them. Plaintiffs failed to comply with and perform their engagements. They cannot enforce the contract against defendants. The principles involved are not those of agency, but those of commutative contracts, where what is given or promised by one party is the equivalent and consideration of what is given or promised by the other.

Plaintiffs' counsel in argument suggests that the invoice was received by defendants on October 9th, showing insurance only to Hopefield. That defendants should thereupon have insured themselves or telegraphed plaintiffs to insure. The boat was lost on the next day, October 10th. Defendants could not have known the whereabouts of the goods. The evidence does not show that there

was any insurance company within their reach or that they could have communicated with plaintiffs, even had they been under obligation so to do.

*Judgment reversed and for defendants.*